```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ROY J. HICKS,

                              Plaintiff,            06-CV-6597

               v.                                   DECISION
                                                    and ORDER
JO ANNE B. BARNHART, Commissioner
of Social Security

                              Defendant.
_____
```

## INTRODUCTION

Plaintiff Roy J. Hicks brings this action pursuant to Title II of the Social Security Act, § 201 et. seq. (Codified at 42 U.S.C. § 401 et. seq.) (the "Act") claiming that the Commissioner of Social Security ("Commissioner") improperly denied him disability benefits.[1] Specifically, Hicks alleges that the decision of the Administrative Law Judge (ALJ) was erroneous and not supported by the substantial evidence in the record, or the applicable law.

Defendant, Jo Anne Barnhart ("defendant") moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law.  The plaintiff has also moved for judgment on the pleadings.  Because the court determines that the findings of the Commissioner are supported by substantial evidence, judgment on the pleadings is hereby granted in favor of the defendant.

---

[1] This case (formerly civil case 03-CV-0220(A)) was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated October 26, 2006.

**BACKGROUND**

On May 21, 2001, plaintiff Roy J. Hicks, a 56 year old former freight handler applied for Social Security disability benefits, claiming that he had become unable to work since January 2, 2001. Hicks was initially denied benefits and thereafter requested a hearing, which was held on September 16, 2002. On the basis of that hearing, the ALJ found that though Hicks' coronary artery disease, depression/anxiety and post-traumatic stress disorder ("PTSD") were "severe" impairments, he did not have a disability as defined by 42 U.S.C. § 423(d) or 20 C.F.R. 404.1501 et seq. (1994) (listing specific impairments that constitute a disability under the Act). Thereafter, Hicks' appeal of the ALJ's decision was denied and on January 31, 2003, plaintiff filed this action.

**DISCUSSION**

**I.   Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v.

Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing court does not try a benefits case de novo).

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted). If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II.  The ALJ's Findings**

The ALJ made his determination based on the evidence before him and concluded that plaintiff did not suffer from a disability[2] under the Act. Specifically, the ALJ found that plaintiff has coronary artery disease, depression/anxiety and PTSD, but that he does not have an impairment or impairments under 20 C.F.R. 404.1501 et seq. (Tr. 14) The ALJ took into account plaintiff's subjective complaints of shortness of breath, poor stamina, lightheadedness, headaches, social isolation, anxiety and sleeplessness, and found that although he could not perform his previous work as a freight handler, he could perform other work existing in significant numbers in the national and local economies as defined by 20 C.F.R. 404.1567. (Tr. 15-16). The ALJ found that Hicks has the residual functional capacity to perform the exertional demands of light work so long as

---

[2]A disability, is defined by 42 U.S.C. § 423(d) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d) (1991).

the job did not involve dealing with the public, more than occasional interaction with supervisors and co-workers, or hazards such as working at heights or around dangerous machinery. (Tr. 15). These are the relevant findings which must be examined for the purpose of determining whether or not they are supported by the evidence in the record.

### III. Plaintiff's Medical History

On January 3, 2001 plaintiff was admitted to the Veterans Administration Medical Center of Buffalo (the "VA") with chest pain, a myocardial infarction, and severe three vessel disease. (Tr. 170-72, 175-76). Plaintiff underwent quadruple coronary artery bypass on January 18, 2001. (Tr. 161-62). He was out of bed the next day and ambulated without difficulty after two days. Plaintiff was to return to light duty work in April and was walking one quarter mile daily. (Tr. 158). Plaintiff was advised to go for cardiac rehabilitation.

On June 12, 2001, the VA reported that plaintiff missed three cardiac rehabilitation sessions. (Tr. 147). Dr. Sam Ahuja, M.D. opined on June 22, 2001 that Hicks could stand and/or walk up to two hours a day and sit up to eight hours daily. (Tr. 144). Further, Dr. Ahuja recommended sedentary work with no lifting over ten pounds. (Tr. 178-79). On July 12, 2001, the VA once again directed plaintiff to contact them since he had missed many sessions. (Tr. 278). When he failed to contact them, he was discharged from cardiac rehabilitation.

Plaintiff underwent a consultative examination on September 20,2001 and it was determined that he was restricted from heavy

lifting, bending or walking long distances. (Tr. 208-13). In addition, on the same day, consultative psychologist Michael P. Santa Maria, Ph.D. examined plaintiff. (Tr. 214-17). While there was no sign of psychosis, Dr. Santa Maria diagnosed plaintiff with depressed disorder and possible PTSD. (Tr. 216). A VA psychologist also saw plaintiff and on October 17, 2001 diagnosed depressive disorder and PTSD based on his reported symptoms. (Tr. 267).

George Burnett, M.D., a State agency consulting psychiatrist reviewed the medical evidence and opined that plaintiff could understand and remember simple instructions and perform simple repetitive tasks in a low contact environment. (Tr. 236). He also found no limitation of Hicks' ability to perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, and make simple work-related decisions. (Tr. 221). Dr. Burnett opined that plaintiff could interact with the public, ask simple questions or request assistance, and get along with co-workers without exhibiting behavioral extremes, and had a moderate limitation of his ability to accept instruction and criticism or maintain socially acceptable behavior. (Tr. 221).

Dr. Alberta Micale reviewed Hicks' medical evidence on October 18, 2001 and concluded that plaintiff could lift and/or carry 20 pounds occasionally or 10 pounds frequently. (Tr. 241). She also stated that plaintiff could sit, stand or walk six hours in an eight-hour work day and that plaintiff had no pushing/pulling, postural, manipulative, visual or communicative limitations. (Tr.

242-44). Plaintiff began attending psychotherapy session in November 2001 and was diagnosed with depression. (Tr. 265). Plaintiff denied current drug use but admitted consuming six to seven beers on weekends. (Id.) In December 2001 plaintiff saw a psychiatrist and stated that he recently developed nightmares. The doctor increased plaintiff's dosage for anti-depressant and also prescribed a sleeping aid. (Tr. 264). On January 22, 2002, plaintiff returned after missing an appointment and reported difficulty sleeping and nightmares several times weekly. (Tr. 262). Relaxation exercises were recommended and curtailment of plaintiff's frequent daytime napping. (Id.)

Hicks did not appear again until April 10, 2002, after missing a number of sessions. (Tr. 260). Jeffrey R. Johnson, a social worker, interviewed plaintiff and completed a social survey for the VA on April 10, 2002 (Tr. 257-59). Plaintiff stated that he had missed a number of sessions because they were not helping. (Id.) He also reported that he still drank. On May 16, 2002, the VA again reported a lack of follow through of behavioral recommendations (Tr. 252). On September 3, 2002, Brian Riegel, a cardiologist, reported that plaintiff's heart condition was stable and advised him to avoid strenuous activity such as lifting, carrying or pulling more than twenty pounds at a time, which would preclude him from returning to work loading cargo. (Tr. 329). On September 9, 2002, the plaintiff's treating physician, Dr. David Holmes concluded that plaintiff was "totally disabled from his former work and should not do any heavy lifting." (Tr. 328)

## IV. The ALJ's Decision was supported by Substantial Evidence in the Record

Plaintiff argues that the ALJ failed to properly consider the medical evidence in the record. However, with the exception of Dr. Holmes' report dated September 9, 2002, it is clear that the substantial evidence in the record supports the ALJ's finding that plaintiff did not have a disability under the Act. Not one of the other doctors concluded that plaintiff was unable to be employed. Indeed many of the reports found that the plaintiff could stand and/or walk up to two hours a day and sit up to eight hours daily. In addition, Dr. Ahuja recommended sedentary work with no lifting over ten pounds.  Moreover, Dr. Micale concluded that plaintiff could lift and/or carry 20 pounds occasionally or 10 pounds frequently. She also stated that plaintiff could sit, stand or walk six hours in an eight-hour work day and that plaintiff had no pushing/pulling, postural, manipulative, visual or communicative limitations. Further, Dr. Burnett opined that plaintiff could understand and remember simple instructions and perform repetitive tasks in a low contact environment. He also found that plaintiff could interact appropriately with the public, ask simple questions or request assistance, and get along with co-workers. Thus, based on the foregoing medical evidence, the ALJ's decision that plaintiff did not have a disability under the act satisfies the "reasonable mind" test as stated in Consolidated Edison. See 305 U.S. at 229.

Plaintiff further argues that the medical evidence in the record does not support the residual functional capacity found by

the ALJ. However, the record reveals that plaintiff's ability to perform a range of daily activities contradicts his claims of disability. Plaintiff reported that he is able to handle basic activities of daily living without difficulty including cooking, shopping with his wife, taking out the garbage and mopping his kitchen floor. (Tr. 132). Plaintiff also stated that he went for walks, watched television, listened to the radio and visited friends. (Tr. 209). He also testified that he spent time listening to the radio, playing video games, and visiting neighbors. (Tr. 40-41).

Substantial evidence in the record supports the ALJ's conclusion that plaintiff was not disabled during the relevant period, and therefore, the Commissioner's decision is affirmed.

## **CONCLUSION**

Because the court finds that the Commissioner's decision was made in accordance with the applicable law, and was supported by substantial evidence in the record, the court hereby grants judgment on the pleadings in favor of the defendant. Plaintiff's motion for judgment on the pleadings is denied.

ALL OF THE ABOVE IS SO ORDERED.

                                        s/Michael A. Telesca
                                          MICHAEL A. TELESCA
                                   United States District Judge

Dated:    Rochester, New York
            December 13, 2006